1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12

BARRY DEGENHARDT,

Plaintiff,

v.

FORD MOTOR COMPANY, et al.,

Defendants.

Case No. 21-cv-1921-MMA (BLM)

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

[Doc. No. 5]

13
14
15
16
17

On October 12, 2021, Plaintiff Barry Degenhardt ("Plaintiff") initiated a civil action against Defendant Ford Motor Company ("Ford") in the Superior Court of California, County of San Diego (the "State Court Action"). Doc. No. 1-3 ("State Ct. Compl."). On November 12, 2021, Ford filed a notice of removal to this Court. Doc. No. 1 ("Notice of Removal" or "NOR"). Plaintiff now moves to remand this case back to state court. Doc. No. 5. Ford filed an opposition, to which Plaintiff replied. Doc. Nos. 7, 9. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 11. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to remand.

18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. BACKGROUND

On January 13, 2019, Plaintiff purchased a 2018 Ford Escape (the "Vehicle") from a Ford authorized retailer in California.[1]   State Ct. Compl ¶ 4.   According to Plaintiff, the Vehicle contained, and thereafter developed, numerous defects, causing Plaintiff to bring the Vehicle in for repairs.   State Ct. Compl. ¶¶ 7–8.   However, according to Plaintiff, Ford was unable to repair the Vehicle "within a reasonable number of opportunities."   State Ct. Compl. ¶ 8.   As a result, Plaintiff initiated the State Court Action against Ford, alleging violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.* ("Song-Beverly Act"), as well as state law claims for breach of the implied warranty of merchantability, fraudulent inducement, and negligent misrepresentation.   State Ct. Compl. at 5–15.   Plaintiff prays for the following relief:

1. For Plaintiff's actual economic damages (including the right of restitution, incidental damages, and consequential damages, as outlined in Cal. Civ. Code §§ 1793.2(d)(2) & 1794(b)) in an amount according to proof;

2. For Plaintiff's noneconomic damages in an amount according to proof;

3. For civil penalty damages of no more than two times Plaintiff's actual damages, as per Cal. Civ. Code §1794(c) or (e);

4. For punitive damages;

5. For costs and expenses, including Plaintiffs attorney's fees, pursuant to Cal. Civ. Code §1794(d) and Cal. Code Civ. Proc. §§ 1032 & 1033.5;

6. For prejudgment interest at the legal rate; and

7. For such other relief as the Court may deem proper.

State Ct. Compl. at 15.

---

[1] As will be explained *infra*, the Court accepts the document offered as Exhibit C in support of Ford's Notice of Removal—for the sole purpose of analyzing the Court's subject matter jurisdiction—as a true and correct copy of the purchase agreement that is the subject of this action.  *See* Doc. No. 1-5.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.* "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). The party seeking federal jurisdiction bears the burden to establish jurisdiction. *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S 178, 182–83 (1936)). Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity between the parties, *see* 28 U.S.C. § 1332.

28 U.S.C. § 1441(a) provides for removal of a civil action from state to federal court if the case could have originated in federal court. The removal statute is construed strictly against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

## III. EVIDENTIARY OBJECTIONS

Plaintiff objects to several paragraphs contained in Hang Alexandra Do's declaration in support of Ford's Notice of Removal. Doc. No. 1-2 ("Do Decl.").

In evaluating the existence of diversity jurisdiction on a motion to remand, courts "consider . . . summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018). Federal Rule of Civil Procedure 56 requires that, before evidence can be considered on summary judgment, a proper foundation must be laid. *See Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007). Pursuant to Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissibly in evidence, and show that the affiant or declarant is

competent to testify on the matters stated." Fed. R. Civ. P 56(c)(4).  However, the Ninth Circuit has explained that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(2).  To that end, "[i]f the contents of a document can be presented in a form that would be admissible at trial," a court has "no basis for refusing to consider it on summary judgment" based upon other evidentiary objections.  *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).

First, Plaintiff objects to Paragraph 7, wherein Do states: "Attached as Exhibit C is a true and correct copy of the purchase contract for the Subject Vehicle, as produced informally by Plaintiff."  Do Decl. ¶ 7.  Exhibit C is a purchase agreement for a 2018 Ford Escape dated January 13, 2019.  Doc. No. 1-5 (the "Purchase Agreement"). According to Plaintiff, he has not provided a copy of any purchase agreement to Ford, and thus, Do lacks the foundation and personal knowledge to offer the Purchase Agreement as evidence.  *See* Fed. R. Evid. 602.  So far as the Court can surmise, Plaintiff does not argue that Exhibit C is *not* a copy of the Purchase Agreement.[2]  Instead, Plaintiff argues that because Do's explanation as to how Ford obtained the Purchase Agreement— that Plaintiff produced it—is incorrect, Ford cannot offer the Exhibit as evidence. Plaintiff also argues that Paragraph 7, and therefore Exhibit C, violates the Best Evidence Rule.  Fed. R. Evid. 1002, 1003.

It is entirely unclear what "produced informally by Plaintiff" means.  Do Decl. ¶ 7. Moreover, Ford curiously does not address this argument or point in opposition. Nonetheless, the Court **OVERRULES** Plaintiff's objections to Paragraph 7.  While Plaintiff's objection calls into question Do's personal knowledge of the Purchase

---

[2] Plaintiff does argue "it is unclear whether the attached contract is a proper duplicate of the original" based upon the "redactions covering key identifying information."  Doc. No. 6 at 2.  While it is true that some identifying information is redacted, both the Purchase Agreement and Plaintiff's State Court Complaint refer to the same VIN.  *Compare* State Ct. Compl. ¶ 4 *with* Doc. No. 1-5 at 2.

Agreement—specifically, how Ford obtained it—as well as the ability for Do to authenticate it at trial, there is no question that the Purchase Agreement can be offered at trial. Moreover, as noted *supra* Note 2, Plaintiff identifies the Vehicle in the State Court Complaint by VIN, and the same VIN is listed on the Purchase Agreement. *Compare* State Ct. Compl. ¶ 4 *with* Doc. No. 1-5 at 2. Therefore, Plaintiff fails to raise a genuine question as to the authenticity of the Purchase Agreement offered as Exhibit C. Accordingly, the Court finds that the contents of Exhibit C are admissible.

Second, Plaintiff objects to Paragraph 8 on the basis that Do lacks foundation and personal knowledge, Fed. R. Evid. 60, and that the statement contains improper expert qualification, Fed. R. Evid. 702, and is improper lay witness opinion, Fed. R. Evid. 701. In Paragraph 8, Do declares that "Wilson Turner Kosmo LLP has extensive experience litigating consumer and product liability lawsuits" representing vehicle manufacturers in over 4,000 cases including cases involving violations of the Song-Beverly Act. Do Decl. ¶ 8.

Because evidence as to Wilson Turner Kosmo LLP's litigation experience could be offered in some admissible form at trial, Plaintiff's objections are unavailing. Moreover, the Court can reasonably infer that Do—an attorney at Wilson Turner Kosmo LLP—has personal knowledge of the firm's Song-Beverly Act litigation experience. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). And the paragraph does nothing more than state Do's personal, layperson opinion that this experience is "extensive." Accordingly, the Court **OVERRULES** Plaintiff's objections to Paragraph 8.

Third, Plaintiff objects to the portion of Paragraph 9, wherein Do states: "In my experience litigation [sic] such cases, plaintiff's counsel routinely seek attorney's fee awards based on an hourly fee of $500, and the total amount of attorney's fees in warranty matters brought pursuant to Song-Beverly regularly exceed $20,000.00." Do Decl. ¶ 9. Plaintiff asserts that this statement is improper expert opinion, Fed. R. Evid.

702, inadmissible hearsay, Fed. R. Evid. 802, improper lay witness opinion, Fed. R. Evid. 701, and lacks foundation and personal knowledge, Fed. R. Evid. 602.

For the same reasons explained above, the Court **OVERRULES** Plaintiff's objections to Paragraph 9.  Evidence of what fees are "routinely" awarded could be offered in admissible form at trial.  And because Do is an attorney licensed to practice in California and employed by Wilson Turner Kosmo LLP, Do Decl. ¶ 1, the Court can reasonably infer Do's personal knowledge of routine attorney's fees requests in Song-Beverly Act litigation.

## IV. DISCUSSION

The parties do not dispute that Ford timely filed the Notice of Removal pursuant to 28 U.S.C. § 1441.  NOR ¶ 2.  According to Ford, the Court has subject matter jurisdiction over the matter under 28 U.S.C. § 1332—diversity jurisdiction.  NOR ¶ 9.  Pursuant to section 1332, a federal district court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the dispute is between citizens of different states.  28 U.S.C. § 1332(a)(1).

At the time he initiated the State Court Action, Plaintiff was a citizen of, and resided in, California.  NOR ¶ 19; State Ct. Compl. ¶ 1.  Ford is a corporation organized under the laws of Delaware with its principal place of business in Michigan.  NOR ¶ 20; Do Decl. Exhibit B.  Accordingly, there is complete diversity among the parties.

The parties do not dispute that complete diversity exists.  Instead, the existence of the Court's subject matter jurisdiction over the action turns on the amount in controversy.

The Supreme Court has held that a notice of removal must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 86 (2014).  However, once a "plaintiff contests, or the court questions, the defendant's allegation" and "both sides submit proof," *id.* at 88, "the preponderance of the evidence standard applies," *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 700–01 (9th Cir. 2018).

The State Court Complaint is silent as to the amount in controversy.  And the issue is disputed.  *See* Doc. Nos. 5, 7.  As such, Ford maintains the burden of establishing by the preponderance of the evidence that this requirement has been met.  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Schneider*, 756 F. App'x at 700–01.

According to the Notice of Removal, Ford asserts that the amount in controversy exceeds $75,000 because Plaintiff seeks restitution ($31,102.40 purchase price, NOR ¶ 13) and a two-time civil penalty ($62,204.80, NOR ¶ 14) totalling $93,307.20, NOR ¶ 15.  Further, Ford notes that Plaintiff also seeks attorney's fees, which "regularly exceed $20,000," NOR ¶ 17, bringing the total amount in controversy to at least $113,307.20.  In seeking to remand the action, Plaintiff asserts that Ford has not met its burden of proving by the preponderance of the evidence that the amount in controversy exceeds $75,000.

**A.    Restitution**

According to the Notice of Removal, the purchase price of the Vehicle was $31,102.40.  NOR ¶ 13.  Ford explains that because the Song-Beverly Act provides for restitution equal to the purchase amount, Cal. Civ. Code § 1793.2(d)(2)(B), the amount in controversy is at least $31,102.40.  NOR ¶ 13.

As discussed above, Plaintiff takes issue with Ford's proffering of the Purchase Agreement.  However, the Court overrules Plaintiff's objections and finds that the Purchase Agreement attached as Exhibit C is admissible for the purpose of determining subject matter jurisdiction.  Moreover, Plaintiff does not dispute that $31,102.40 was, in fact, the purchase price, or provide any evidence to the contrary.  Therefore, the Court finds that Ford has established, for the sole purpose of this jurisdictional analysis, that the purchase price of the Vehicle was $31,102.40 and therefore at least $31,102.40 is in controversy.

**B.      Deductions**

Ford's notice of removal makes no mention of any deductions to the Vehicle's restitution value.  Plaintiff, however, argues that the amount in controversy must be reduced by several applicable deductions.  Doc. No. 5 at 6–8.  As the Ninth Circuit has explained:

> We have recognized that an estimate of the amount in controversy must be reduced if "a specific rule of law or measure of damages limits the amount of damages recoverable." *See, e.g., Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983); *see also Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015). Thus, an estimate of the amount in controversy must be based on the applicable "measure of damages," not on what a plaintiff requests in a complaint. *See, e.g., Morris*, 704 F.3d at 1115. Here, the measure of restitution is defined as "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *See, e.g., In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131, 103 Cal. Rptr. 3d 83 (2009).

*Schneider*, 756 F. App'x at 702 n.3.  Accordingly, the Court addresses the potential deductions in calculating the amount in controversy.

    *1.      Usage Offset*

As Plaintiff correctly argues, restitution under the Song-Beverly Act—for the purpose of determining the amount in controversy—may be properly reduced by "mileage offset" or "usage offset."  *See Schneider*, 756 F. App'x at 702 n. 3.  Plaintiff argues that usage offset would be $3,740.54.[3]

In opposition, Ford offers an August 19, 2019 repair order, *see* Doc. No. 7-1 at 6–8, Exhibit 1 ("Repair Order"), and asserts that this was the first repair presentation, Doc. No. 7 at 12.  According to the Repair Order, the Vehicle had 6,227 miles on the odometer at the time of the first repair presentation.  Doc. No. 7-1 at 7.  This figure, minus the

---

[3] According to Plaintiff, his first presentation of the Vehicle for repairs was made at 21,153 miles.  Doc. No. 5-1 ("Che Decl.") ¶ 4.  However, this assertion is controverted by the uncontested Repair Order, submitted in opposition, and Plaintiff does not argue otherwise in reply.

21 miles on the Vehicle's odometer at the time of purchase, *see* Purchase Agreement at 2, results in a mileage attributable to Plaintiff of 6,206.  Doc. No. 7 at 7.

The cash value of the Vehicle at the time of purchase was $26,041.  Doc. No. 7-1 at 3; Purchase Agreement at 2.  Therefore, based upon the cash value, mileage attributable to Plaintiff, and Song-Beverly Act statutory multiplier, the value of the Vehicle may be reduced by $1,346.75.[4]  Consequently, the amount in controversy after the usage offset deduction is $29,755.65.[5]  Cal. Civ. Code § 1793.2(d)(2)(C).

### 2.    *Non-Manufacturer Installed Items*

Plaintiff also asserts that the cost of the theft deterrent device may be properly deducted.  Doc. No. 5 at 7.  Pursuant to the Song-Beverly Act, when calculating restitution, a manufacturer may exclude "nonmanufacturer items installed by a dealer." Cal. Civ. Code § 1793.2(d)(2)(B).  Ford does not dispute this or otherwise argue that the theft deterrent device may not be deducted.  Doc. No. 7 at 12 n.2.

According to the Purchase Agreement, a theft deterrent device valued at $594 was installed into the Vehicle at the time of sale.  Purchase Agreement at 2.  Therefore, deducting this non-manufacturer installed item, the amount in controversy is reduced to $29,161.65.[6]

### 3.    *Manufacturer's Rebate*

Finally, Plaintiff argues that the $4,800 Manufacturer's Rebate should also be deducted.  Doc. No. 5 at 8.  Restitution under California Civil Code § 1793.2 is the "*actual* price paid."  Cal. Civ. Code § 1793.2(d)(2)(B) (emphasis added).  Put another way, it is "[t]he difference between what the plaintiff paid and the value of what the plaintiff received."  *Schneider*, 756 F. App'x at 702 n.3 (quoting *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (2009) (internal quotation marks omitted)).  Here, because the

---

[4] (6,206 * $26,041) / 120,000 = $1,346.75.
[5] $31, 102.40 – $1,346.75 = $29,755.65.
[6] $29,755.65 – $594 = $29,161.65.

purchase price was reduced by $4,800 due to the Manufacturer's Rebate—*to wit* Plaintiff did not pay Ford $4,800—it may be properly excluded from the restitution calculation. And again, Ford does not argue otherwise. Accordingly, the Court concludes that the amount in controversy is reduced to $24,361.65.[7]

## C.   Song-Beverly Act Civil Penalty

The Song-Beverly Act authorizes plaintiffs to recover "a civil penalty which shall not exceed two times the amount of actual damages." Cal. Civ. Code § 1794(c). As noted above, in addition to restitution, Plaintiff also prays "[f]or civil penalty damages of no more than two times Plaintiff's actual damages, as per Cal. Civ. Code §1794(c) or (e)."

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). While the Song-Beverly Act does not expressly provide for punitive damages, "[c]ourts have held that the civil penalty under the Song-Beverly Act is akin to punitive damages, because both have the dual effect of punishment and deterrence for defendants." *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (citations omitted). Plaintiff does not dispute that the civil penalty is akin to punitive damages and thus may be properly included in the amount in controversy calculation. Doc. No. 5 at 8– 9. Nonetheless, Plaintiff argues that Ford fails to meet its burden of showing that civil penalty damages may be recoverable by the preponderance of the evidence. Doc. No. 5 at 8.

The amount in controversy encompasses "all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018). It "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627

---

[7] $29,161.65 – $4,800 = $24,361.65.

F.3d 395, 400 (9th Cir. 2010).  Thus, "[i]n measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

According to the State Court Complaint, Ford was or should have been aware that it was in violation of the Song-Beverly Act due to Ford's "numerous service bulletins and recall campaigns, its internal communications and investigations into the nature of the same defect(s) in other 2018 Ford Escape vehicles equipped with the 1.5L EcoBoost engine, warranty claims submitted to it, communications from its authorized repair facilities, [and] communications from its consumers."  State Ct. Compl. ¶ 19; *see also id.* ¶ 27.  On this basis, Plaintiff alleges that Ford's violations were willful and that he is therefore entitled to a two-time civil penalty under Cal. Civ. Code § 1794(c).  *Id.* at ¶¶ 20, 28.

Assuming Plaintiff's allegations are true and that he will succeed on his Song-Beverly Act claims, Plaintiff will be entitled to the civil penalty.  Therefore, the Court finds that Ford has met its burden of showing that the amount in controversy includes the prayed for civil penalty.  Based upon the restitution value calculated above, Plaintiff therefore may be entitled to $48,723.30 as a penalty.[8]  Accordingly, the amount in controversy is increased to $73,084.95.[9]

**D.    Attorney's Fees**

In support of removal, Ford asserts that the amount in controversy includes Plaintiff's prayed for attorney's fees, "which regularly exceed $20,000."  NOR ¶ 17.  Plaintiff does not appear to dispute that attorney's fees are included in the amount in controversy calculation.  Doc. No. 5 at 11.  Indeed, a reasonable estimate of attorney's

---

[8] $24,361.65 * 2 = $48,723.30.
[9] $24,361.65 + $48,723.30 = $73,084.95.

fees likely to be incurred may be used in calculating the amount in controversy.  *See Brady*, 243 F. Supp. 2d at 1010–11.

Instead, Plaintiff takes issue with Ford's evidence on this point.  Doc. No. 5 at 11.  As discussed *supra* Part III, the Court overrules Plaintiff's objections to Do's declaration.

According to Do, at an hourly rate of $500, "attorney's fees in warranty matters brought pursuant to [the] Song-Beverly [Act] regularly exceed $20,000."  Do Decl. ¶ 9.  This is the only mention of attorney's fees in Do's declaration.  Namely, Do's declaration is silent as to any estimate of attorney's fees that have been incurred or are anticipated to accrue.  Further, Do's declaration submitted in opposition to the motion to remand makes no mention of attorney's fees whatsoever; Do merely provides further support for Wilson Turner Kosmo LLP's "Song-Beverly and the Magnuson-Moss Warranty Act" experience.  Doc. No. 7-1 ¶ 16.

In its opposition brief, Ford argues that "Counsel in Song-Beverly matters have recently been awarded fees in excess of $20,000.00 in Song-Beverly Act matters that resolve at the Early Neutral Evaluation ("ENE") Conference in this District."  Doc. No. 7 at 14.  In support of this position, Ford cites to two cases, *Pappas v. Ford Motor Co.*, No. 21-CV-584-BEN-KSC, 2021 WL 5810661 (S.D. Cal. De c. 7, 2021) (awarding $21,165 in fees after the plaintiff sought $48,947.80 for a Song-Beverly matter, which settled at the ENE Conference), and *Tapia v. Ford Motor Co.*, No. 20-CV-1510-W-MSB, (S.D. Cal. Oct. 19, 2021) (awarding $22,828.00 in fees after the plaintiff sought $44,399.39 for a Song-Beverly matter, which settled at the ENE Conference).  *Id.*  However, Ford's argument is not evidence, and as the amount in controversy is in dispute, the Court is required to apply the Rule 56 summary judgment evidentiary standard.  *See Fritsch*, 899 F.3d at 795 ("[W]e require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence. We also require the defendant to make this showing with summary-judgment-type evidence."); *Schneider*, 756 F. App'x at 700–01; *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996).  Moreover, the mere

reference to two "recent" cases awarding attorney's fees, Doc. No. 7 at 14, without more, does not evince the amount of fees *commonly* incurred in *similar* litigation such that the Court can determine that it is more likely than not that Plaintiff may be entitled attorney's fees "in excess of $20,000" in this case. *Id.*

In *Brady*, the court relied on both a declaration stating an estimate of fees incurred to date and a declaration detailing fee awards in similar Song-Beverly Act cases to calculate the amount in controversy. 243 F. Supp. 2d at 1011. Ford makes no evidentiary attempt to come close to this showing. *See* C*onrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (finding that "[d]efendant's contention that attorney fees are likely to total at least $20,000 is too speculative" because defendant failed to estimate "the amount of time each major task will take" or vary the hourly billing rate for each task); *Sood v. FCA US, LLC*, No. CV 21-4287-RSWL-SK, 2021 U.S. Dist. LEXIS 198438, at *16–17 (C.D. Cal. Oct. 14, 2021) (finding that defendant's reliance on *Brady* was misplaced because defendant did not provide similar evidentiary support); *Savall v. FCA US LLC*, No. 21CV195 JM (KSC), 2021 U.S. Dist. LEXIS 81477, at *9–10 (S.D. Cal. Apr. 28, 2021) (distinguishing the *Brady* case because "[w]ithout making some effort to set forth the value of attorneys' fees that Plaintiff is expected to incur, or that Plaintiff has incurred, [Defendant] has failed to meet its burden . . .."). While the Court is mindful that future fees are unknown, it is Ford's burden to establish the Court's subject matter jurisdiction and the mere allegation that twice attorneys have been awarded amounts greater than $20,000 in cases settled at the ENE "provides little, if anything, upon which the court can rely, at this early stage in the litigation, to estimate the attorneys' fees that could possibly be awarded in a comparable Song-Beverly Act case." *Millan v. FCA US LLC*, No. 20cv328 JM (MDD), 2020 U.S. Dist. LEXIS 117280, at *8–9 (S.D. Cal. July 2, 2020).

In sum, Ford's argument regarding attorney's fees is speculative, lacks evidentiary support, and is conclusory at best. *See Wastier v. Schwan's Consumer Brands, N. Am., Inc.*, No. 07CV1594, 2007 U.S. Dist. LEXIS 89441, at *9 (S.D. Cal. Dec. 5, 2007).

Simply assuming "at least $20,000," Doc. No. 7 at 14, will be awarded is inconsistent with the principle that the Ford "must provide evidence that it is 'more likely than not' that the amount in controversy" requirement is satisfied. *Sanchez*, 102 F.3d at 404. Without making some effort to set forth the value of attorney's fees Plaintiff is expected to incur, Ford fails to meet its burden of showing that the amount of attorney's fees satisfies the amount in controversy requirement. *Id.*; *Castillo v. FCA USA, LLC*, No. 19-CV-151-CAB-MDD, 2019 U.S. Dist. LEXIS 210180, at \*5 (S.D. Cal. Dec. 5, 2019).

Therefore, the Court finds that Ford has not shown the amount in controversy includes "at least $20,000" in attorney's fees, Doc. No. 7 at 14, by the preponderance of the evidence. Accordingly, the amount in controversy is $73,084.95 and therefore Ford fails to overcome the traditional presumption against removal and establish the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## V. Conclusion

Based upon the foregoing, the Court **GRANTS** Plaintiff's motion to remand. The Court therefore **REMANDS** this case to the Superior Court of California, County of San Diego. As the Court lacks subject matter jurisdiction, the Court **DECLINES** to rule on Ford's pending motion to dismiss. Doc. No. 4. The Court further **DIRECTS** the Clerk of Court to terminate all pending motions and close this case.

**IT IS SO ORDERED**.

Dated: January 10, 2022

HON. MICHAEL M. ANELLO
United States District Judge